# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO.  5:20-CV-058-DCK

| | | |
|---|---|---|
| **MARY H. RICH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **ORDER** |
| **v.** | ) | |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,[1]** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 13) and Defendant's "Motion For Summary Judgment" (Document No. 16).  The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition.  After careful consideration of the written arguments, the administrative record, applicable authority, and testimony from the hearing, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>;  that Defendant's "Motion For Summary Judgment" be <u>granted</u>;  and that the Commissioner's decision be <u>affirmed</u>.

## I.     BACKGROUND

Plaintiff Mary H. Rich ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits.  (Document No. 1).  On or about December 14, 2012, Plaintiff filed an application for a period of disability and

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.  Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew M. Saul as Defendant in this action.

supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning January 25, 2011. (Transcript of the Record of Proceedings ("Tr.") 199). Plaintiff later amended her alleged onset date to November 27, 2012. (Tr. 20, 38-39). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on May 8, 2013, and again after reconsideration on December 9, 2013. (Tr. 130, 142). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We realize that your condition keeps you from doing some types of work, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 142).

Plaintiff appeared and testified at a hearing before Administrative Law Judge Helen O. Evans on November 3, 2015. (Tr. 807, 839-896); see also (Tr. 36-93). ALJ Evans issued an unfavorable decision on June 6, 2016, denying Plaintiff's disability claim. (Tr. 807-818); see also (Tr. 20-31). Plaintiff's request for review of the ALJ's decision was then denied by the Appeals Council on April 20, 2017. (Tr. 786).

Plaintiff appealed to this Court on June 20, 2017. See Rich v. Berryhill, 5:17-CV-106-GCM (W.D.N.C. 2017). On January 25, 2018, the Honorable Graham C. Mullen issued an Order granting the parties' consent motion to remand the case to the Commissioner for further administrative proceedings. (Tr. 793-796). The Appeals Council then directed that upon remand, an ALJ will "[f]urther evaluate whether claimant's intellectual disorder meets listing 12.05 or any other listing in the listing of impairments." (Tr. 802); see also (Tr. 719).

2

On January 30, 2019, Plaintiff appeared and testified at a hearing before Administrative Law Judge Clinton C. Hicks (the "ALJ"). (Tr. 719, 747-785). In addition, Jacqueline Kennedy-Merritt, a vocational expert ("VE"), and Samuel Furgiuele, Plaintiff's attorney, appeared at the hearing. Id. Following the hearing, the ALJ directed Plaintiff to undergo additional consultative examinations. (Tr. 719-720) (citing Tr. 937-938, 1198-1211, 1212-1219).

The ALJ issued an unfavorable decision on June 18, 2019, denying Plaintiff's claim. (Tr. 716-735). On June 26, 2019, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on or about March 13, 2020. (Tr. 710-712). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 710).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on May 11, 2020. (Document No. 1). The parties consented to Magistrate Judge jurisdiction on November 30, 2020, and this case was reassigned to the undersigned as presiding judge. (Document No. 10).

Plaintiff's "Motion for Summary Judgment" (Document No. 13) and "Memorandum In Support ..." (Document No. 13-1) were filed January 21, 2021; and Defendant's "Motion For Summary Judgment" (Document No. 16) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 17) were filed May 7, 2021. "Plaintiff's Reply To Defendant's Motion For Summary Judgment" (Document No. 20) was filed on May 27, 2021.

The pending motions are now ripe for review and disposition.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to:  (1) whether substantial evidence supports the

3

Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between November 27, 2012, and the date

4

of the ALJ decision.[2]  (Tr. 720).  To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled.  20 C.F.R. § 404.1520(a).  The five steps are:

> (1)  whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2)  whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3)  whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4)  whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled;  and
>
> (5)  whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps;  if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy.  Pass, 65 F.3d at

---

[2]  Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

1203.  In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.  (Tr. 732-735).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since November 27, 2012, her alleged disability onset date.  (Tr. 721).  At the second step, the ALJ found that "scoliosis of the thoracic spine, degenerative changes of the cervical and lumbar spines, right carpal tunnel syndrome, right wrist osteopenia and right thumb arthritis, tendonitis of the left upper extremity, left hip trochanteric bursitis status post fracture, chronic obstructive pulmonary disease/asthma, obesity, depression, anxiety, and borderline intelligence were severe impairments."[3]  (Tr. 722).  At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (Tr. 722-726).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work activity, with the following limitations:

> she can never climb ladders, ropes or scaffolds;  occasionally climb ramps and stairs;  engage in frequent overhead reaching but no overhead lifting of more than 10 pounds;  frequent reaching, handling, fingering and feeling bilaterally and avoid concentrated exposure to hazards such as unprotected heights or dangerous parts; she should avoid concentrated exposure to dust, fumes, and other respiratory irritants.  In addition, the claimant can stay on task for up to two hours at a time throughout the workday, but she is limited to performing unskilled, simple, routine and repetitive tasks with no more than occasional interaction with supervisors, co-workers and the public.

(Tr. 726).  In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective

---

[3]  The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert, 482 U.S. 137 (1987).

medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id.

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as a housekeeping cleaner. (Tr. 732).

At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. Id. Specifically, the VE testified that according to the factors given by the ALJ, occupations Plaintiff could perform included a marker, a sorter, and a stock checker. (Tr. 733). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between November 27, 2012, and the date of the decision, June 18, 2019. (Tr. 735).

Plaintiff on appeal to this Court contends that the ALJ erred by failing to: (1) find Plaintiff "presumptively disabled" under the Listings; (2) build an accurate and logical bridge from the evidence to his conclusions; and (3) properly consider all medical opinions. (Document No. 13-1, pp.5-25). The undersigned will discuss each of these contentions in turn.

A.      **Presumptively Disabled**

In the first assignment of error, Plaintiff argues that she is presumptively disabled under a Listing. (Document No. 13-1, p. 5). Plaintiff notes that she "originally contended that she met Listing 12.05(C)," but "the Social Security Administration adopted regulations effective January 17, 2017 which eliminated that Listing." Id. (citing Tr. 39, 292).

Plaintiff identifies a recent decision in which the Fourth Circuit considered the relevance of Listing 12.05(C). (Document No. 13-1, pp. 5-6) (citing Kiser v. Saul, 821 Fed.Appx. 211, 213, n.1 (4th Cir. 2020)). Plaintiff notes that in Kiser the Fourth Circuit observed that

the version of the listings in effect as of the date of the Commissioner's final decision controls. ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

Id. (quoting Kiser, 821 Fed.Appx. at 213 n.1) (quoting Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed.Reg. 66138 n.1, 2016 WL 5341732 (Sept. 26, 2016)). Plaintiff goes on to quote the Fourth Circuit's additional observation regarding Listing 12.05(C):

In amending the listings, the Commissioner stated that "[i]f a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules **to the entire period at issue in the decision** we make after the court's remand." 81 Fed. Reg. at 66,138 n.1. Thus, according to the Commissioner, on remand an ALJ will apply the revised listings, not Listing 12.05(C). *Id.* Though application of the revised listings, as proposed by the Commissioner, may generate retroactivity concerns, we do not reach that issue here, as it would be premature to do so.

(Document No. 13-1, p. 6) (quoting Kiser, 821 Fed.Appx. at 216 n.5) (emphasis added).

Plaintiff argues that Listing 12.05(C) should control here "since it was the rule in effect when she *applied*" because "no statutory authority was cited to support its retroactive effect." (Document No. 13-1, pp. 6-7) (citing 81 Fed.Reg. 66138 n.1) (emphasis added). But in the end, Plaintiff "maintains that she meets the listing for diminished intellectual functioning" regardless of which version of Listing 12.05 is applied. (Document No. 13-1, p. 7).

Plaintiff provides a lengthy recitation of evidence in the record that she contends supports the establishment of all three prongs of 12.05(C). (Document No. 13-1, pp. 7-15). Plaintiff suggests that both ALJs erred in failing to find Plaintiff disabled under Listing 12.05. (Document No. 13-1, pp. 7-15) In conclusion, Plaintiff argues that Plaintiff "met Listing 12.05 before and after its revision, with 'marked' limits in all four categories the ALJ rated 'moderately' impaired." (Document No. 13-1, p. 15).

8

In response, Defendant contends that "[t]he ALJ properly analyzed the revised Listing 12.05, . . . despite the fact that Ms. Rich filed her claim before the regulatory change took effect." (Document No. 17, p. 5). Defendant notes that the ALJ decision under review here was issued June 18, 2019, and that the Commissioner's revised Listing 12.05 was effective as of January 17, 2017, and provided that "[w]e expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." (Document No. 17, p. 5, n.6).

Defendant acknowledges <u>Kiser</u>, and then identifies a more recent Fourth Circuit decision in which "the Fourth Circuit held that a repealed immigration regulation was not impermissibly retroactive." (Document No. 17, p. 6) (citing <u>Gonzalez v. Cuccinelli</u>, 985 F.3d 357, 371-374 (4th Cir. 2021). Defendant notes that the Fourth Circuit in <u>Gonzalez</u> relied on the Sixth Circuit's reasoning in <u>Combs v. Commissioner of Social Security</u> "where the court concluded a regulation change that repealed the obesity listing while a case was pending adjudication on remand was not impermissibly retroactive so as to invoke the Supreme Court's presumption against retroactivity." (Document No. 17, p. 6) (quoting <u>Gonzalez</u> 985 F.3d at 373-374) (citing <u>Combs</u>, 459 F.3d at 640 (6th Cir. 2006). Defendant argues that "the facts and procedural posture in <u>Combs</u> are analogous to this case." (Document No. 17, p. 6).

Defendant notes that the "Sixth Circuit acknowledged that following *Landgraf* 'applying the current law to pending cases [as the ALJ did in this case] is the rule rather than the exception.'" <u>Id.</u> (quoting <u>Combs</u> 459 F.3d at 656-657). According to Defendant, "[t]his Court agrees." <u>Id.</u> (citing <u>Fulbright v Apfel</u>, 3:02-CV-022-CH, 114 F.Supp.2d 465 (W.D.N.C. Sept. 11, 2000) (citing <u>Landgraf v. USI Film Products</u>, 511 U.S. at 273-277 (1994)) ("reaffirming general principle that a court is to apply the law in effect at the time of its decision").

Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff's impairment does not meet Listing 12.05(B). (Document No. 17, pp. 10-13). Defendant notes that "Ms. Rich must show that she has significant deficits in adaptive functioning <u>currently</u> manifested by extreme limitation of one, or marked limitation of two, of the four broad areas of mental functioning." (Document No. 17, p. 10) (citing 20 C.F.R. Pt. 404, Subpt. P, app. 1, §12.05(B)(2). According to Defendant, "the ALJ's discussion of pertinent evidence, including Ms. Rich's self-reports, daily activities, and examination findings, constitutes substantial evidence to conclude that Ms. Rich's borderline intellectual functioning does not meet the Listing criteria." (Document No. 17, p. 11) (citing <u>Craig v. Saul</u>, 3:19-CV-404-WCM, 2020 WL 4349842 (W.D.N.C. Jul. 29, 2020)).

Defendant states that "[i]n this case the ALJ rated the four broad areas of mental functioning based on the evidence (Tr. 723-26), and discussed pertinent evidence in detail when determining Ms. Rich's RFC (Tr. 729-32)." (Document No. 17, p. 12). Defendant next cites a number of activities that Plaintiff is able to perform to suggest that she is, at most, moderately limited in mental functioning. <u>Id.</u> (citing Tr. 725-26). Importantly, Defendant argues, these activities show Plaintiff's ability to "learn, recall, and use information to perform work activities"; "focus attention on work activities and stay on task at a sustained rate"; and "regulate emotions, control behavior, and maintain well-being" is adequate despite her intellectual deficits. <u>Id.</u> (citing 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00(E)). Defendant also contends that "no medical source indicated that Ms. Rich's borderline intellectual functioning meets or medically equals Listing 12.05." (Document No. 17, p. 13) (citing Tr. 100, 116, 485-486, 1216).

Finally, Defendant notes that "'[a] cursory explanation' at step three may be 'satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of

10

record and there is substantial evidence to support the conclusion.'" Id. (quoting Craig, 2020 WL 4349842 at *2).

In her reply brief, Plaintiff focuses on her first argument regarding the Listings and which version of 12.05 should have been applied here. (Document No. 20, pp. 3-8). Mostly, Plaintiff attempts to distinguish the cases relied on by Defendant. Id.

For example, Plaintiff contends that the Combs case "was wrongfully decided and at most represents only one of several different responses by courts which were ostensibly applying the same criteria, showing the complexity of the question." (Document No. 20, p. 4). Plaintiff describes Combs as a "weak precedent for a finding that the removal of a Listing without other revisions to ensure that it is not a 'substantive' change, but only 'procedural' can be applied to a period before its removal." (Document No. 20, p. 8).

Next, Plaintiff addresses Landgraf, noting that it "was a case involving the retroactive effects of a statute, not a regulation passed pursuant to statute." Id. at 5.

Plaintiff then criticizes the Fulbright case, where "Judge Horn found that the revised obesity Listing applied to a claim filed before the change," as "brief and conclusory" because Judge Horn considered Landgraf but he "did not discuss Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) or integrate the two cases." (Document No. 20, p. 7).

Plaintiff also contends that "defendant also ignored the Appeals Council's own order, wherein it discussed Ms. Rich's potential conformity with Listing 12.05(C)." (Document No. 20, p. 7) (citing Tr. 801-802). Plaintiff asserts that the Appeals Council "could have made clear a view that Ms. Rich's claim could **not** be evaluated under the prior Listing, but instead at least implied that it could." Id.

In conclusion, Plaintiff opines that the application of Listing 12.05 "is unsettled in this circuit, . . . but that the best result is for a portion of the claim through the effective date of the change in the regulations [should] be adjudicated under the old Listing and the period of the claim thereafter [should] be adjudicated under the new [Listing]." (Document No. 20, p. 8). Plaintiff contends that "a claim can be partially approved and adjudicated under different rules for different periods." Id.

The question before this Court is whether the ALJ's June 18, 2019 decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards. The undersigned is persuaded that the ALJ here applied the correct Listing and that his decision is supported by substantial evidence.

Plaintiff presents little, if any, argument that the ALJ's decision at step 3 is not supported by substantial evidence. Rather, Plaintiff argues that the ALJ applied an incorrect legal standard by declining to evaluate Plaintiff under Listing 12.05(C) and presents the facts that she contends support a finding of disability at step 3. Plaintiff does not cite any precedent for deciding the case under the former standard in part, and the revised standard in part, and the undersigned will respectfully decline that option. See (Document No. 20, p. 5).

While the undersigned agrees that the question of which version of Listing 12.05 to apply is not explicitly addressed in the cases cited by these parties, the undersigned is persuaded by the Fourth Circuit's notation in Kiser that, at least according to the Commissioner, "Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." Kiser, 821 Fed.Appx. at 213, n.1. See also Hoglen v. Saul, 1:20-CV-061-MOC-WCM, 2021 WL 521211, at *4 (W.D.N.C. Jan. 22, 2021) (finding "that the ALJ's failure to consider the

12

previous version of Listing 12.05 does not require remand.") adopted by, 1:20-CV-061-MOC-WCM, 2021 WL 510622 (W.D.N.C. Feb. 11, 2021).

The "Order Of Appeals Council" providing ALJ Hicks' instructions on July 6, 2018, clearly acknowledged that Listing 12.05(C) was applicable to the *original* ALJ decision in 2016, but had been subsequently rescinded. (Tr. 801). The Appeals Council then directed that Plaintiff's intellectual disorder be evaluated as to whether it "meets listing 12.05 or any other listing of impairments." (Tr. 802). The Appeals Council could have directed the ALJ to evaluate Plaintiff pursuant to 12.05(C), but it did not. Id. Moreover, when the Appeals Council considered Plaintiff's objections to ALJ Hick's decision, it "found no reason under our rules to assume jurisdiction." (Tr. 710). Presumably, if Judge Hicks had applied a different standard than the Appeals Council had ordered when remanding the case to him, it would have said so and remanded again. Compare (Tr. 710 and Tr. 801-802). Based on the foregoing, Plaintiff's argument that Defendant "ignored the Appeals Council's own order" is unavailing. Compare (Document No. 20, p. 7 and Tr. 710).

In addition, the undersigned finds the Fourth Circuit's recent decision in Gonzalez citing Combs to be instructive. The Gonzalez decision seems to favorably adopt the reasoning in Combs that "repealing obesity as a disability for attaining social security benefits was not impermissibly retroactive even though it was detrimental to the plaintiff." Gonzalez, 985 F.3d at 373-374 (citing Combs, 459 F.3d at 645-647).

Although the revision of Listing 12.05 during the pendency of this action presents a somewhat close call as to which version to apply, the undersigned finds that the more recent version was correctly applied by ALJ Hicks. Importantly, the ALJ's decision indicates both in its explicit statement and in its analysis that he "heard" the Appeals Council's instruction to further

13

evaluate Plaintiff's intellectual disorder.  <u>See</u> (Tr. 719, 722-726).  The ALJ's consideration appears to be thorough and supported by substantial evidence.  <u>See</u> (Tr. 722-726).

The ALJ carefully analyzed the requirements of Listing 12.05 but found that Plaintiff's limitations were no more than "moderate," and therefore, she was not disabled pursuant to 12.05 or any other Listing.  <u>Id.</u>  It is noteworthy that *following the hearing* the ALJ requested that Plaintiff undergo additional consultative examinations by Dr. Girmay and Dr. Reavis and then incorporated those evaluations into his decision.  <u>Id.</u>

It is not the duty of this Court to re-weigh the evidence.  Where, as here, the ALJ appears to have applied the proper legal standard and relied on substantial evidence, the Court must affirm the ALJ's decision.  In short, the undersigned is not persuaded that Plaintiff has met her burden to show that the ALJ erred in his step 3 analysis.

**B.**     **Accurate and Logical Bridge**

Next, Plaintiff argues that the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusions," including between Plaintiff's mental and physical limitations and the RFC. (Document No. 13-1, p. 15) (citing <u>Monroe v. Colvin</u> 826 F.3d 176, 179 (4th Cir. 2016)).  Plaintiff addresses the ALJ's findings concerning Plaintiff's mental capacities first.

Plaintiff questions the ALJ's finding that Plaintiff could remain on task for up to two hours. (Document No. 13-1, p. 16).  Plaintiff claims that the ALJ does not explain "how the evidence supported" that conclusion, except for a "conclusory statement at the end of his explanation for his RFC that she could, leaving the reader to guess the basis for this finding."  <u>Id.</u> (citing Tr. 732).

Next, Plaintiff argues that the ALJ failed to include a provision in the RFC to "specifically address even 'moderate' deficiencies for understanding, remembering and applying information or adaptation."  <u>Id.</u>  Plaintiff contends that the ALJ "erroneously found that she had a 'limited

14

education,' . . . when the evidence showed at best 'marginal' capabilities under 20 C.F.R. § 416.964." Id (citing Tr. 732). Plaintiff takes issue with the exclusion of provisions from the RFC that "directly address her limited understanding by, for example, specifying the way she would learn a job." Id. (citing Tr. 216). Plaintiff contends that she "was limited to jobs learned through 'short demonstration.'" (Document No. 13-1, p. 19).

Plaintiff next addresses her "physical problems" and claims that the ALJ failed to adequately explain how Plaintiff could use her right hand. (Document No. 13-1, p. 20). "Despite concluding that she suffered from 'severe' impairments which included right carpal tunnel syndrome, right wrist osteopenia and right thumb arthritis, the ALJ found that Ms. Rich had the capacity for 'frequent reaching, handling, fingering and feeling bilaterally.'" Id. (quoting Tr. 722, 726). Plaintiff contends that the ALJ failed to provide an "adequate explanation for how he concluded that Ms. Rich's problems with her right hand and wrist would allow 'frequent' handling, fingering and feeling." (Document No. 13-1, p. 20). The ALJ also allegedly "ignored" findings showing a dramatic loss of grip strength. (Document No. 13-1, p. 21).

However, Plaintiff acknowledges that the ALJ cited February 2019 findings by Dr. Girmay that Plaintiff "had reported a big improvement in her arm pain and resolution of paresthesias with Prednisone," rated "her bilateral handgrip []as good," and found "only minimal (4 to 4+/5) weakness in the right hand/arm and normal reflexes and intact sensation." Id. (citing Tr. 730).

Still, Plaintiff argues that the ALJ's analysis of her ability to use her right hand and wrist is inadequate and requires reversal. (Document No. 13-1, p. 22).

Plaintiff also briefly discusses what she characterizes as a misstatement of the evidence concerning her back pain. (Document No. 13-1, pp. 22-23). Plaintiff notes that the ALJ stated her back condition did "not cause compromise of a nerve root or the spinal cord," however, he

acknowledged "secondary lateral recess stenosis." Id. (citing Tr. 723, 727). Plaintiff contends that "'lateral recess stenosis' in facts suggests compromise of a nerve root." Id. at 23. Moreover, Plaintiff asserts that the ALJ inaccurately described the number of reports regarding her positive straight-leg raising and antalgic gait. (Document No. 13-1, p. 23).

In response, Defendant notes that Plaintiff "has the burden to prove the extent of h[er] functional limitations; it is not the ALJ's burden to prove a lack of limitations." (Document No. 17, p. 13) (quoting Durham v. Saul, 3:20-CV-295-KDB, 2021 WL 1700353, at *5 (W.D.N.C. Apr. 29, 2021) (quoting Hendrickson v. Berryhill, 1:16-cv-367-MOC-DLH, 2018 WL 1431751, at *7 (W.D.N.C. Mar. 22, 2018)). Defendant contends that the ALJ carefully examined the medical evidence and accounted for limitations he found to be supported by such evidence. (Document No. 17, p. 13).

Defendant first argues that the ALJ properly accounted for Plaintiff's mental impairments. (Document No. 17, p. 14). Defendant notes that "the ALJ explained that Plaintiff's daily activities, State agency psychological consultant assessments, consultative examination findings, and self-reports support the RFC finding." Id. at 15 (citing Tr. 723-26, 729-32 and O'Dell v. Saul, 5:20-CV-048-KDB, 2021 WL 1233480 at *3-4 (W.D.N.C. Apr. 1, 2021) (finding that the ALJ's discussion of State agency psychological consultants' assessments and consultative examination findings was sufficient to support that the plaintiff **could stay on task for two hours at a time** when performing simple, routine, repetitive tasks or unskilled work)) (emphasis added).

Defendant further notes that "[m]ental RJC assessments are highly individualized and fact specific." (Document No. 17, p. 15) (citing SSR 85-15, 1985 WL 56857, at *5-6 (S.S.A. 1985)). "The ALJ discussed Plaintiff's borderline intellectual functioning" including multiple different factors such as her IQ score of 72 and her educational history. Id. Defendant observes that the

16

ALJ concluded that "Ms. Rich's mental status examinations were consistently unremarkable aside from occasional mood difficulties and cognitive deficits that are consistent with her intellectual abilities." (Document No. 17, p. 16) (citing Tr. 729, 386, 388, 393-94, 409, 418, 467, 483, 999-1043).

Defendant also notes that Plaintiff "consistently reported that her mental functioning does not significantly impact her daily activities or social functioning" and that "she has generally been able to conform to social standards, comply with rules, cooperate with authority figures, and interact appropriately with peers." (Document No. 17, p. 17) (citing Tr. 100, 483). Defendant states that Plaintiff has "conceded that she generally functions independently … attributing any difficulties to her medical issues." Id. (citing Tr. 397, 405 413, 422, 482-483, 1213-1214).

Defendant goes on to describe several consultative opinions that the ALJ weighed in evaluating Plaintiff's mental impairments, including that she is able to "maintain attention and concentration **for 2 hours at a time** as required for the performance of simple tasks." Id. at 17-19 (quoting Tr. 121) (emphasis added). Defendant concludes that "the ALJ properly determined Ms. Rich's mental RFC limitations based on the totality of the evidence and his mental RFC findings should be affirmed." (Document No. 17, p. 19).

Defendant also argues that the ALJ properly accounted for Plaintiff's physical impairments in the RFC. Id. at 19. Defendant notes that "[t]he ALJ found the record established severe impairments that could cause Ms. Rich's alleged symptoms, but the record did not support her allegations concerning the intensity, persistence, and limiting effects of those symptoms." Id. at 20 (citing Tr. 727).

17

Defendant asserts that the ALJ accommodated Plaintiff's impairments when restricting her to a range of light work with postural limitations and limited exposure to occupational hazards." (Document No. 17, pp. 20-21) (citing Tr. 727).

Defendant contends that "examination findings consistently noted intact gait, normal sensation, good motor and grip strength, and minimal weakness in the right upper extremity despite occasional difficulties." Id. at 21 (citing Tr. 727-28) (citing Tr. 409, 467-68 (demonstrated fine manipulation without difficulty), 491 (bilateral hand grip is good), 492-93, 591, 700, 946 (shoulder pain decreased), 950 (minimal weakness), 977 (examination negative despite upper extremity complaints), 994-95, 1004, 1007, 1013)).

In addition, Defendant notes that Dr. Burgess opined that "she was only 'mildly' impaired when characterizing her functional limitations and f[ound] she could write and pick up coins with either hand without difficulty." (Document No. 17, p. 21) (citing Tr. 468-469). Defendant contends that Plaintiff's "imaging and diagnostic studies and reported improvement with treatment" support the ALJ's finding that Plaintiff could do light work. (Document No. 17, p. 22).

Plaintiff does not address this alleged error in her reply brief. (Document No. 20).

The undersigned finds that Defendant's arguments here are persuasive. In addition, it is noteworthy that Plaintiff has improved some of her symptoms and/or limitations with medication. See (Tr. 728-729). The undersigned further observes that despite a "history of chronic obstructive pulmonary disease/asthma" and having been "repeatedly advised [] to stop smoking," Plaintiff "still smokes, which clearly aggravates her respiratory condition and suggests it is not as bad as alleged." (Tr. 728)(internal citations omitted). The ALJ noted that an "individual who fails to follow a prescribed course of remedial treatment without good reason will not be found disabled." Id. (citing 20 C.F.R. §416.930(b)).

The undersigned finds that the ALJ's decision is supported by substantial evidence and that he has more than adequately describe the evidence of record that supports his decision. The undersigned is not persuaded that the bridge between the evidence and the ALJ's conclusions is inadequate and requires reversal or remand. To the contrary, the decision is logical and thorough.

## C.     Medical Opinions

Finally, Plaintiff argues that the ALJ failed to properly consider all medical opinions. (Document No. 13-1, pp. 23-25).

According to Plaintiff, the ALJ failed to consider the opinion of Amanda K. Bliss, PA, including a statement she wrote on a prescription pad on November 11, 2016, that Plaintiff "is unable to work due to COPD & severe anxiety and depression which is debilitating." (Document No. 13-1, p. 24). Plaintiff concludes that the "ALJ's failure to even mention this opinion suggests he was unaware of it." Id. Plaintiff also cites to Exhibit 13F as "the record of Ms. Bliss from August 4, 2016 to November 11, 2016, the latter date of her opinion." (Document No. 13-1, p. 24) (citing Tr. 941-951).

In addition to allegedly failing to consider the Bliss opinion, Plaintiff contends that the ALJ "gave short shrift" to the opinion of Dr. Stephen Burgess, a consulting physician, "assigning 'some but not great weight.'" Id. at 24 (citing Tr. 729-731). Plaintiff adds that the ALJ "ignored or overlooked a more important portion of the opinion." (Document No. 13-1, p. 25) (citing Tr. 466, 469).

In response, Defendant notes that "an ALJ's determination 'as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'. . . or has failed to give a sufficient reason for the weight afforded a particular opinion.'" (Document No. 17, p. 22) (quoting Dunn v. Colvin, 607 Fed.Appx.

264, 267 (4th Cir. 2015) (internal citations omitted)).  Defendant further notes that an ALJ "is not required to repeat his analysis with respect to every finding and sub-finding in the decision."  Id. (citing <u>McCartney v. Apfel</u>, 28 F. App'x 277, 279 (4th Cir. 2002) ("[T]he ALJ need only review medical evidence once in his decision.").

Defendant concludes that *if* the ALJ's failure to explicitly address the opinions of Amanda Bliss, PA and/or Dr. Burgess is error, it is harmless.  <u>Id.</u> at 23.  Moreover, Ms. Bliss' opinion regarding whether Plaintiff is disabled is an issue reserved for the Commissioner.  <u>Id.</u>

Plaintiff also declines to address this alleged error in her reply brief.  (Document No. 20).

The undersigned again finds Defendant's argument most persuasive.  Defendant correctly notes that the ALJ did not explicitly address Amanda Bliss' opinion(s), but the undersigned observes that her opinion was cited several times in the ALJ's decision.  <u>See</u> (Tr. 724, 727-729) (citing Tr. 941, 944, 946, 947).  Moreover, the ALJ's discussion of Dr. Burgess' opinion seems adequate, considering that he examined the Plaintiff once in March 2013, and concluded that her "ability to perform work-related activities" was only "mildly impaired."  (Tr. 729-730, 469); <u>see also</u> (Tr. 727-729) (citing Tr. 467-468, 469).

Based on the foregoing, the undersigned will decline to remand this case based on the ALJ's consideration of the medical opinions.  The undersigned finds that the ALJ's consideration and explanation(s) were more than adequate as to this issue.

## IV.    CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Johnson v. Barnhart</u>,

434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will direct that the Commissioner's decision be affirmed.

**IT IS, THEREFORE, ORDERED** that: Plaintiff's "Motion For Summary Judgment" (Document No. 13) is **DENIED**; the Defendant's "Motion For Summary Judgment" (Document No. 16) is **GRANTED**; and the Commissioner's determination is **AFFIRMED**.

**SO ORDERED**.

Signed: September 30, 2021

David C. Keesler
United States Magistrate Judge

21